UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY FARKAS, M.D., LLC, d/b/a INTERVENTIONAL NEURO ASSOCIATES, <br><br> Plaintiff, <br><br> -against- <br><br> GROUP HEALTH INCORPORATED, <br><br> Defendant. | The Honorable Colleen McMahon <br><br> Civil Action No.: 1:18-cv-08535 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

SCHWARTZ SLADKUS REICH
GREENBERG ATLAS LLP
*Attorneys for Plaintiff*
270 Madison Avenue
New York, New York 10016
(212) 743-7054

*On the Brief*:

Michael Gottlieb

i

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

LEGAL ARGUMENT................................................................................................................ 4

   POINT I: DEFENDANT'S ANTI-ASSIGNMENT PROVISION IS INAPPLICABLE TO PLAINTIFF'S CLAIM WHICH CONSTITUTES A SURPRISE BILL................................... 4

   POINT II: ALTERNATIVELY, DEFENDANT WAIVED ITS ANTI-ASSIGNMENT PROVISION THROUGH ITS DIRECT COURSE OF DEALING WITH PLAINTIFF ........ 6

CONCLUSION........................................................................................................................... 8

s

# **Table of Authorities**

**Cases**                                                                                                                       **Page(s)**

*Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, No. 10 Civ. 7427(JSR), 2011
   WL 803097, at *5 (S.D.N.Y. Feb. 18, 2011) .................................................................................. 6

*Neuroaxis Neurosurgical Assoc., PC v. Cigna Healthcare of New York, Inc.*, No. 11 Civ.
   8517(BSJ)(AJP), 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012) ........................................... 6

*Protocare of Metro. N.Y., Inc. v. Mut. Ass'n Adm'rs, Inc.*, 866 F.Supp. 757, 761–62
   (S.D.N.Y.1994) ............................................................................................................................. 7

*Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 402, 144 N.E.2d 387, 391
   (1957) ............................................................................................................................................ 6

*Werking v. Amity Estates, Inc.*, 2 N.Y.2d 43, 52, 137 N.E.2d 321, 327 (1956). ............................... 6

# PRELIMINARY STATEMENT

Plaintiff, Jeffrey Farkas, M.D. LLC, d/b/a/ Interventional Neuro Associates ("Plaintiff"), by and through its attorneys, Schwartz Sladkus Reich Greenburg Atlas LLP, respectfully submits this brief in opposition to Defendant Group Health Incorporated's ("Defendant") Motion to Dismiss (hereinafter, "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

This case arose because one of Defendant's insureds, Noe S. ("Patient"), suffered a stroke, on or around May 23, 2017. Patient was rushed to the emergency department of NYU Langone Medical Center where one of Plaintiff's physicians performed emergency brain surgery on Patient. Subsequently, Plaintiff submitted a medical bill to Defendant, Patient's insurance company.

Of important note, Defendant's insurance plan generally includes coverage for in-network treatment only. As an out-of-network provider, Plaintiff's treatment was only subject to reimbursement because the services in question were emergent and no in-network provider was available.

An additional consequence of Plaintiff's out-of-network status is that reimbursement for Plaintiff's services is not subject to a pre-determined contractual rate. Thus, the dispute that gave rise to the within cause of action involves the proper level of reimbursement for Plaintiff's services under the terms of Patient's insurance plan for out-of-network emergency treatment.

Now, in its Motion, Defendant attempts to argue that Plaintiff lacks standing as an assignee of Patient due to an anti-assignment provision in Patient's insurance plan.

1

Defendant's Motion is cynical because, as Defendant acknowledges, the anti-assignment provision contains an exception for a surprise bill. Defendant's contention that there is no indication that a participating provider was unavailable is nonsensical as that is the only reason that Patient's treatment was subject to coverage in the first place.

Alternatively, Defendant waived enforcement of the ani-assignment provision through a direct course of dealing with Plaintiff. Specifically, Defendant waived enforcement of the anti-assignment provision by issuing direct payment to Plaintiff, communicating with Plaintiff about the outstanding balance on numerous occasions, and even adjusting its reimbursement of the subject claim by offsetting an unrelated patient account.

Accordingly, Defendant's Motion should be denied.

## STATEMENT OF FACTS

Plaintiff is a medical provider comprised of a team of neurologists who specialize in acute treatment following strokes, brain aneurysms, carotid disease, and vascular problems of the brain, spine, and neck. Amended Complaint ¶4. On May 23, 2017, Plaintiff's physicians performed emergency brain surgery on Defendant's member, Noe S. ("Patient") in the NYU Langone Medical Center in Brooklyn, New York, after Patient suffered a stroke. *Id*., ¶ 7. Subsequently, Plaintiff submitted a medical bill to Defendant demanding payment for the performed treatment in the total amount of $137,386.77. *Id*., ¶ 8. As an out-of-network provider, Plaintiff does not have a network contract with Defendant that would determine or limit payment for Plaintiff's treatment of Defendant's members. *Id*., ¶ 10.

On or around August 23, 2017, Plaintiff received a single-case agreement proposal from an entity known as Multiplan to accept $107,000.00 from Defendant as payment in full for Plaintiff's medical services. *Id.*, ¶ 11. On August 23, 2017, Plaintiff accepted Multiplan's proposed agreement by signing and submitting it to Multiplan per the instructions set forth in the agreement. *Id.*, ¶ 13. However, as of November 13, 2017, nearly three months after submitting the agreement, Plaintiff had still not received any payment from Defendant. *Id.*, ¶ 14.

On November 13, 2017, Plaintiff submitted a "First Level Appeal" demanding payment for Plaintiff's treatment of Patient. *Id.*, ¶ 15. On November 17, 2017, Defendant issued payment in the amount of $5,312.35 for Plaintiff's treatment of Patient. *Id.*, ¶ 16.

On December 4, 2017, Plaintiff submitted a "Second Level Appeal" challenging Defendant's reimbursement as an underpayment and requesting a copy of the relevant summary plan description. *Id.*, ¶ 17. Moreover, for the next several months, Plaintiff corresponded with representatives of Defendant, attempting to reconcile the outstanding balance. *Id.*, ¶ 18.

On April 28, 2018, Defendant recouped its prior payment of $5,312.35 by offsetting a subsequent and unrelated medical claim submitted by Plaintiff. *Id.*, ¶ 19.

On June 26, 2018, Defendant issued a subsequent payment for Plaintiff's treatment of Patient in the amount of $9,109.35. *Id.*, ¶ 20. Plaintiff commenced the within action seeking the remaining balance of $128,277.42. *Id.*, ¶ 27-28.

# LEGAL ARGUMENT

## POINT I

### DEFENDANT'S ANTI-ASSIGNMENT PROVISION IS INAPPLICABLE TO PLAINITIFF'S CLAIM WHICH CONSTITUTES A SURPRISE BILL

Defendant argues that Plaintiff lacks standing due to an anti-assignment provision while acknowledging the key exception to the provision for "surprise bills." Pursuant to the plan terms, "a surprise bill is a bill You receives for Covered Services…performed by a non-participating Physician at a participating Hospital or Ambulatory Surgical Center, when: A participating Physician is unavailable at the time the health care services are performed…" Def. Mtn, at 6. The claim at issue constitutes a surprise bill because it is a bill for covered services, performed by a non-participating physician at a participating hospital, when a participating physician was unavailable at the time the services were performed.

Defendant asserts that the pleading lacks facts that would indicate the claim at issue to be a surprise bill, noting "the only indicia of a surprise bill that can be found…is that the procedure performed by Plaintiff was allegedly an 'emergency.'" *Id*. Of course, though, this scintilla of information is what this entire case turns on. The fact that Patient's stroke treatment was emergent, and that an in-network provider was unavailable, is not in dispute as it is the only reason that Patient's treatment was eligible for coverage.

Pursuant to the plan terms, "Except for care for an Emergency Condition described in the Emergency Services and Urgent Care Section of this Contract, You will be responsible for paying the cost of all care that is provided by Non-Participating

4

Providers." *See*, Exhibit B to the Hollander Declaration at p. 1. Thus, the emergent nature of Patient's treatment is why Defendant issued any payment at all on Plaintiff's claim.

Defendant argues that Plaintiff's claim is perhaps not a surprise bill by noting that "a surprise bill does not include a bill for health care services when a participating Physician is available and You elected to receive services from a non-participating Physician." Def. Mtn., p. 6. To that end, Defendant notes that "the pleading does not allege whether a participating physician was available…" *Id*. However, the pleading makes clear that the treatment at issue was emergency brain surgery in response to a stroke. Amended Complaint. ¶ 7. Is Defendant suggesting that Patient, in an emergency condition, elected Plaintiff as his provider of choice, foregoing the treatment of an available in-network provider? Or that the pleadings are somehow unclear on this point? Defendant is myopically ignoring the facts and circumstances of Patient's treatment which is made clear in the pleading.

Moreover, as already noted, the only reason Patient's treatment was eligible for coverage is because it was emergent. Axiomatically, the reason for such an exception to the plan's in-network only coverage is that one is unable to elect their healthcare provider in an emergency. Defendant has already acknowledged that the treatment was an emergency, and that Patient was unable to elect a network provider, by issuing payment on the claim. Thus, questioning whether there was a network provider available appears to be an argument of counsel that is completely belied by Defendant's conduct.[1]

---

[1] Defendant does not directly question whether Patient's treatment was performed in a participating hospital, a seemingly tacit admission that this is not at issue. In any event, NYU Langone Medical Center's network relationship with Defendant is publicly available information.

Accordingly, it is clear from the pleading, as well as all evidence currently on the record, that Plaintiff's claim constitutes a surprise bill and, as such, Defendant's anti-assignment provision is inapplicable.

## POINT II

### ALTERNATIVELY, DEFENDANT WAIVED ENFOCEMENT OF ITS ANTI-ASSIGNMENT PROVISION THROUGH ITS DIRECT COURSE OF DEALING WITH PLAINTIFF

Alternatively, Defendant waived enforcement of its anti-assignment provision through its direct course of dealing with Plaintiff. It is, or should be, undisputed that "[a] prohibition against assignment…may be waived." *Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 402, 144 N.E.2d 387, 391 (1957), collecting cases. "Waiver is the intentional relinquishment of a known right." *Id*. citing *Werking v. Amity Estates*, Inc., 2 N.Y.2d 43, 52, 137 N.E.2d 321, 327 (1956). Moreover, whether an anti-assignment clause was waived is potentially a triable issue, not to be "flung off on a motion…" *Sillman* 3 N.Y.2d at 392.

In the context of an ERISA health benefits plan containing an anti-assignment clause, an insurer may waive enforcement of the clause by furnishing payment directly to the assignee, i.e. the provider. *Neuroaxis Neurosurgical Assoc., PC v. Cigna Healthcare of New York, Inc*., No. 11 Civ. 8517(BSJ)(AJP), 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012) (finding that the defendant's "long-standing pattern and practice of direct payment to [the provider] is sufficient to show its consent to [the provider's] assignments" notwithstanding the plan's anti-assignment provision); *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, No. 10 Civ. 7427(JSR), 2011 WL 803097, at *5 (S.D.N.Y. Feb. 18, 2011) (finding the defendant was "estopped from relying on the anti-

assignment provision in light of [their] own long-term pattern and practice of accepting and paying on [the plaintiff's] direct billing" because the plan "either expressly authorizes patients to assign their claims to healthcare providers without [the defendant's] consent, or, at the very least, creates an ambiguity within the contract that should be construed against the drafter."); *Protocare of Metro. N.Y., Inc. v. Mut. Ass'n Adm'rs, Inc*., 866 F.Supp. 757, 761–62 (S.D.N.Y.1994) ("[a]lthough the Plan does contain an anti-assignment provision, it also provides for the possibility of direct payment to the health care provider and if the Plan had intended to prevent all assignments ... then it would not have preserved the discretion to pay [the plaintiff] directly.").

Here, Defendant waived enforcement of the anti-assignment provision by communicating directly with Plaintiff on numerous occasions regarding the outstanding balance, issuing direct payment to Plaintiff in response to Plaintiff's bill, and adjusting its reimbursement by offsetting payment on an unrelated account. (Amended Comp. ¶ 23.) Plaintiff submitted a HCFA medical bill to Defendant with a notation that it accepted an assignment of benefits. (*See*, Exhibit B to Amended Comp.) As noted by terminated Defendant Multiplan, "GHI did not deny payment based on any anti-assignment provision in the Plan document; rather, Plaintiff was paid pursuant to its assignment from the patient." See, Dkt. No. 28 at p. 2.

Defendant's adjustment of an unrelated account is similarly significant because it demonstrates the direct business relationship between the parties. That is, not only did Defendant issue direct payment to Plaintiff; in determining that its initial payment to Plaintiff was incorrect, Defendant took the liberty of adjusting an unrelated account, as

7

though the business relationship between the parties allows for regular adjustments to previous payments.

Accordingly, Defendant has waived its anti-assignment provision and Plaintiff has standing to proceed with this matter.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: New York, New York
April 12, 2019

>
> SCHWARTZ SLADKUS REICH
> GREENBERG ATLAS LLP
> *Attorneys for Plaintiff*
>
> By: **/s/Michael Gottlieb**
> Michael Gottlieb
> 270 Madison Avenue
> New York, New York 10016
> (212) 743-7054