UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x

JEFFREY FARKAS, M.D., LLC d/b/a
INTERVENTIONAL NEURO ASSOCIATES,

                    Plaintiff,

  -against-

GROUP HEALTH INCORPORATED,

                    Defendant.
--------------------------------------------------------------- x

No. 18 Civ. 8535 (CM)(KHP)

## MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Jeffrey Farkas, M.D., LLC, d/b/a Interventional Neuro Associates ("Plaintiff") filed its Complaint in the Supreme Court of the State of New York in the County of New York on August 15, 2018. (Notice of Removal, Ex. A ("Compl."), Dkt. No. 1.) On September 19, 2018, Defendant Group Health Incorporated ("Defendant GHI") and then-Defendant MultiPlan Inc. ("MultiPlan") removed the case to this Court. (Dkt. No. 1.)

On September 26, 2018, both Defendant GHI and then-Defendant Multiplan moved to dismiss the Complaint. (Dkt. Nos. 6 & 16.)

On February 1, 2019, the Court granted Defendant GHI's and then-Defendant MultiPlan's Motions to Dismiss without prejudice, finding that Plaintiff's breach of contract claim was preempted by the Employee Retirement Income Security Act ("ERISA"). (Mem. Decision Granting Defs.' Mot. to Dismiss and Granting Pl. Leave to Amend the Compl. ("Feb. 19, 2019 Decision"), Dkt. No. 38.) The Court granted Plaintiff leave to amend the Complaint to allege an ERISA claim against GHI and MultiPlan, if appropriate. (*Id.*)

1

On February 14, 2019, Plaintiff filed an Amended Complaint solely against GHI, alleging violations of ERISA §§ 1132(a)(1)(B), 1132(a)(3), 1104(a)(1), and 1105(a). (Am. Compl., Dkt. No. 41.)

Defendant GHI has now moved to dismiss the Amended Complaint. (Dkt. No. 42.)

## FACTS

For the purposes of this motion, I assume familiarity with the facts underlying this case, which were outlined in my February 1, 2019 Decision.

In brief, Noe S. ("Patient") is insured by one of Defendant's HMO program policies ("the Plan"). The Plan covers in-network benefits only, and a patient is responsible for paying the cost of all care that is provided by non-participating physicians except in "emergency conditions." (Decl. of Scott C. Hollander in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., Dkt. No. 43, Ex. B ("Plan Contract"), at 1.)

The Plan terms are set forth in the Health Maintenance Organization Contract ("the Plan Contract"). (*Id.*) The Plan Contract includes a clause regarding assignment of health care benefits and legal claims:

> You cannot assign any benefits under this Contract or legal claims based on a denial of benefits to any person, corporation or other organization. You cannot assign any monies due under this Contract to any person, corporation or other organization *unless it is an assignment to Your Provider for a surprise bill*. See the How Your Coverage Works section of this Contract for more information about surprise bills. *Any assignment by You other than for monies due for a surprise bill* will be void. Assignment or legal claims based on a denial of benefits means the transfer to another person or to an organization of Your right to the services provided under this Contract or Your right to collect money from Us for those services. However, You may request Us to make payment for services directly to Your Provider instead of You. Nothing in this paragraph shall affect Your right to appoint a designee or representative as otherwise permitted by applicable law.

2

(*Id.* at 101) (emphasis added). This provision expressly prohibits the assignment of rights and benefits under the Plan, unless the assignment is to "Your Provider for a surprise bill." (*Id.*)

The Plan Contract defines a "surprise bill" as follows:

> A surprise bill is a bill You receive for Covered Services in the following circumstances:
>
> - For services performed by a non-participating Physician at a participating Hospital or Ambulatory Surgical Center, when:
>   - A participating Physician is unavailable at the time the health care services are performed;
>   - A non-participating Physician performs services without Your knowledge; or
>   - Unforeseen medical issues or services arise at the time the health care services are performed.
>
> A surprise bill does not include a bill for health care services when a participating Physician is available and You elected to receive services from a nonparticipating Physician.
>
> - You were referred by a participating Physician to a Non-Participating Provider without Your explicit written consent acknowledging that the Referral is to a Non-Participating Provider and it may result in costs not covered by Us. For a surprise bill, a referral to a Non-Participating Provider means:
>   - Covered Services are performed by a Non-Participating Provider in the participating Physician's office or practice during the same visit;
>   - The participating Physician sends a specimen taken from You in the participating Physician's office to a nonparticipating laboratory or pathologist; or
>   - For any other Covered Services performed by a Non-Participating Provider, when Referrals are required under Your Contract.

(*Id.* at 12.)

In May 2017, Patient suffered a stroke and required emergency brain surgery, which was performed by Plaintiff's physicians. (Am. Compl., Dkt. No. 41, ¶ 7.) After the surgery, Patient assigned his health insurance rights and benefits to Plaintiff. (*Id.* ¶ 8.)

3

Plaintiff submitted medical bills totaling $137,386.77 to Defendant, demanding payment for the performed treatment. (*Id.* ¶ 9.) Plaintiff is an out-of-network provider under Patient's Plan, so its care is only covered in "emergency conditions." Plaintiff does not have a network contract with Defendant that determines payment for Plaintiff's treatment of Defendant's members. (*Id.* ¶ 10.)

After much back and forth between the Parties – during which Plaintiff signed a single-case agreement to accept $107,000 from Defendant provided certain circumstances were met (which they were not) – Defendant ultimately paid Plaintiff $9,109.35 for its services. (*See* Am. Compl. ¶¶ 9, 21; *see also* Feb. 19, 2019 Decision at 4–5, 9–10.)

Plaintiff brings two ERISA claims in its amended complaint. First, it seeks relief pursuant to ERISA § 1132(a)(1)(B), the ERISA provision that permits health benefit plan participants and beneficiaries to bring civil suits against plan administrators to enforce their rights under health benefit plans. (Am. Compl. ¶¶ 29–34.) Second, it seeks relief pursuant to ERISA § 1132(a)(3)(B), which permits a participant, beneficiary, or fiduciary to obtain equitable relief for, among other things, breaches of fiduciary duty by a plan administrator. (*Id.* ¶¶ 35–43.) Plaintiff seeks to recover the outstanding balance, as well as compensatory damages and interest. (*Id.* Claim For Relief.)

## DISCUSSION

### I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must plead facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. R & C Transit, Inc.*, No. 216CV02481ADSARL, 2018 WL 794572, at *2 (E.D.N.Y. Feb. 7, 2018).

On a motion to dismiss, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the Plaintiff. *See Jiggetts v. CIGNA Healthcare*, No. 10 CIV. 4242 JSR RLE, 2011 WL 747098, at *1 (S.D.N.Y. Feb. 1, 2011), *report and recommendation adopted*, No. 10 CIV. 4242 JSR, 2011 WL 746958 (S.D.N.Y. Mar. 1, 2011) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)); *see also Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015). However, it is not bound to accept legal conclusions that are "couched as factual allegation[s]." *Iqbal*, 556 U.S. at 678. A motion to dismiss analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

In determining a motion to dismiss, the Court may consider any written instrument attached to the complaint as an exhibit, any statement or documents incorporated by reference, and any document that is integral to the complaint, which means that the complaint "relies heavily" on the document's "terms and effect." *Chambers*, 282 F.3d at 153.

5

## II. Analysis

The plain language of ERISA § 1132(a) permits only health plan participants, beneficiaries, and fiduciaries to bring claims under ERISA § 1132. *See Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991). ERISA § 1132(a)(1)(B) authorizes a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C.A. § 1132. ERISA § 1132(a)(3)(B) authorizes a participant, beneficiary, or fiduciary to bring a civil action to "(A) enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." *Id.*

The Second Circuit has recognized a "narrow exception" to these standing requirements to allow standing for "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329 (2d Cir. 2011) (quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001)).

ERISA plans are permitted to get around this "narrow exception" by prohibiting assignment to health care providers. Courts will not permit assignment when a plan "unambiguously" prohibits it. *See Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (citing cases).

As this Court has observed, and the Parties do not dispute, the Plan contains an unambiguous anti-assignment provision. (*See* Feb. 19, 2019 Dec. at 13.) But that is not the end of the story. The anti-assignment clause has an exception: assignment to a provider is permitted when the bill is a "surprise bill." (*Id.*; *see also* Plan Contract at 101. ("You cannot assign any monies due under this Contract to any person, corporation or other organization *unless it is an assignment to Your Provider for a surprise bill*.") (emphasis added).)

When I issued my February 19, 2019 decision granting Defendant GHI's (and former Defendant Multiplan's) motion to dismiss, I permitted Plaintiff to amend its complaint to allege an ERISA claim, despite the existence of the anti-assignment provision, because I had no way to know whether the bill at issue was a "surprise bill." Neither Party had provided the Plan language defining a "surprise bill"; all I knew at that time was that Plaintiff had undergone emergency surgery, which certainly suggested that the bill at issue could have qualified as a "surprise bill."

I now have access to the pertinent plan language. In support of its Motion to Dismiss the Amended Complaint, Defendant provided the Plan language defining a "surprise bill,"[1] as one rendered "[f]or services performed by a non-participating Physician at a Participating Hospital . . . when: [1] a participating Physician is unavailable at the time the health services are performed; [2] a non-participating Physician performs services without [the Patient's] knowledge; or [3] unforeseen medical issues or services arise at the time the health care services are performed." (Plan Contract at 12.) It specifically does not include "a bill for health services when a participating Physician is available and [the Patient] *elected* to receive services from a Non-Participating Physician." (*Id.* (emphasis added).)

Alternatively, a "surprise bill" is also one rendered when the patient was "referred by a participating Physician to a Non-Participating Provider without [his] explicit written consent acknowledging that the Referral is to a Non-Participating Provider" and either (1) covered services are performed in the participating physician's office during the same visit; (2) a specimen is sent from the participating physician's office to a non-participating lab; or (3) "any

---

[1] The Court considers this affidavit on the motion to dismiss because it is incorporated into the Amended Complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

7

other covered service [is] performed by a Non-Participating Provider, when referrals are required under [the Patient's] contract." (*Id.*) This aspect of the definition appears to be inapplicable.

Defendant argues that "the pleading provides no facts that would indicate that this is a surprise bill" because it does not allege "whether a participating physician was available or not, whether the patient was able to consent or not to Plaintiff performing the procedure, or whether unforeseen medical events arose during the rendering of the services." (Def. GHI's Br. in Supp. of Mot. to Dismiss Pl.'s Am. Compl, Dkt. No. 44, at 6–7.) Defendant further argues that Plaintiff has alleged "no facts which demonstrate that Plaintiff was in an emergency condition" and that the failure to specifically plead that Plaintiff has met the exact requirements for a "surprise bill" is fatal. (Def. GHI's Reply Br. in Further Supp. of its Mot. to Dismiss Pl.'s Am. Compl., Dkt. No. 49, at 4.)

I disagree. In fact, I find Defendant's position ludicrous and offensive.

Plaintiff has pleaded that Patient suffered a "parietal lobar intracranial hemorrhage, also known as a stroke" which required "emergency brain surgery." (Am. Compl. ¶ 7.) A stroke that requires emergency brain surgery is an "emergency condition." Taking the allegations of the Amended Complaint in the light most favorable to Plaintiff, the Court can infer that, given the circumstances, it is highly likely that Plaintiff's bill qualifies as a "surprise bill." People who have strokes that require emergency brain surgery are often unconscious, or limited in their ability to communicate and comprehend basic information; at the very least, they are terrified and focused on getting the best care as quickly as possible. They need immediate medical attention or they risk permanent brain damage. They have no time to shop; they are rarely in a position to ask detailed questions about whether the doctor, who is about to open their skulls, is

in-network with their insurance, or whether an in-network physician is available on an instant's notice and without any delay.

Indeed, a stroke that requires surgery on an emergency basis strikes me as precisely the sort of situation for which the "surprise bill" exception was created.

Accordingly, it is clear that Plaintiff has plausibly alleged that the bill at issue was a "surprise bill." *See Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 602 (E.D.N.Y. 1995). If discovery reveals information suggesting otherwise, Defendant can raise the issue again in a motion for summary judgment. *See McNeely v. Metro. Life Ins. Co.*, No. 18 CIV. 885 (PAC), 2019 WL 1383643, at *4 (S.D.N.Y. Mar. 26, 2019).

Since Plaintiff has plausibly alleged that the bill at issue is a "surprise bill" and, therefore, that the anti-assignment provision does not apply, Plaintiff has plausibly alleged standing as a beneficiary under ERISA § 1132(a)–(b).[2]

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is DENIED. The Clerk of Court is respectfully directed to remove Dkt. No. 42 from the Court's list of open motions.

Dated: May 14, 2019

Chief Judge

BY ECF TO ALL COUNSEL

---

[2] Because I have found Plaintiff has plausible alleged that the bill at issue was a "surprise bill," I need not address Plaintiff's alternative argument that the anti-assignment provision does not apply because GHI waived enforcement of its anti-assignment provision through its direct course of dealing with and direct payment to Plaintiff.

9